IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CA No. CA-3-4101-O |
| | § | |
| RICHARDSON INDEPENDENT | § | |
| SCHOOL DISTRICT | § | |

## ANNUAL REPORT OF THE RICHARDSON INDEPENDENT SCHOOL DISTRICT: 2011

THE RICHARDSON INDEPENDENT SCHOOL DISTRICT ("RISD" or the "District"), defendant, in accordance with the Court's Order originally filed September 10, 1970, and modified by Orders filed May 26, 1976, and October 7, 1980, submits its 2011 Annual Report to the Court ("Annual Report").

**1.   NUMBER/ETHNICITY OF STUDENTS**

  a.   The number of students enrolled in the District, by race, appears on Row 56 of the Student Enrollment Column of the Ethnic Distribution Chart attached hereto as Exhibit A.[1]

  b.   The number of students enrolled at each RISD school, by race, appears on Rows 1-55 of the Student Enrollment Column of Exhibit A.

  c.   By Order dated May 26, 1976, the Court no longer requires RISD to submit the number of students enrolled in each classroom in each of the schools in the District. *See Order Relieving Defendant of a Reporting Responsibility*, dated May 26, 1976.

**2.   NUMBER/ETHNICITY OF TEACHERS**

  a.   The number of full-time teachers employed by RISD, by race, appears on Row 56 of the Teacher Count Column of Exhibit A.

  b.   The number of full-time teachers employed at each RISD school, by race, appears on Rows 1-55 of the Teacher Count Column in Exhibit A.

---

[1]   The information on Exhibit A reflects the federally identified ethnicity categories.

    c.    The number of part-time teachers employed by RISD, by race, is included within Row 56 of the Teacher Count Column of Exhibit A.

    d.    The number of part-time teachers employed at each school in the District, by race, is included within Rows 1-55 of Exhibit A.

**3.  INTER-DISTRICT TRANSFERS**

RISD has granted no inter-district transfers out of the District during the current semester or since the last report to the Court. *Note:* In furtherance of the District's efforts to improve its ability to recruit and retain highly qualified staff, RISD's Board policy allows children of employees who do not live in the District to enroll in RISD under an inter-district transfer. In the interest of helping students avoid disruption to their educational program, that policy also allows students who are enrolled in RISD who move out of the RISD attendance area during a semester to maintain their RISD enrollment through the end of the semester. RISD high school seniors who move out of the District during their senior year similarly may remain enrolled the entire senior year.

**4.  TRANSPORTATION**

RISD's transportation system is fully integrated. All transportation services are offered on a nondiscriminatory basis.

**5.  FACILITIES**

RISD operates all of its facilities, including without limitation, gymnasiums, auditoriums, and cafeterias, on a desegregated basis.

**6.  CONSTRUCTION**

Two proposed projects for the renovation of RISD facilities are reflected on the Construction Chart that is attached hereto as Exhibit B. The projects listed on Exhibit B represent anticipated renovations to District facilities in accordance with the District's long range facilities plan. Completion of these projects is contingent on the approval of the Bond Referendum discussed in Paragraph 9 below. No new construction has occurred.

In compliance with the requirements of the Texas Education Code, the RISD Board of Trustees has approved the construction delivery methods for the projects noted on the chart. The Board's approval of construction contracts for these projects will be contingent upon approval of a bond referendum. (*See* ¶9a) The Construction chart contains the following information:

| Column | Content |
|---|---|
| A | Name and location of facility being constructed/renovated. |
| B1 & B2 | Grade levels, number, and race of students to be assigned at the location. |
| C1 & C2 | Actual and/or anticipated dates preliminary and final architectural plans will be completed. |
| C3 | Dates on which construction bids were advertised and accepted. |
| C4 | Dates on which site preparation and/or construction was undertaken. |

7. **SALE OR ABANDONMENT OF SCHOOL PROPERTY**

   a. A list of school equipment or supplies having a value of more than $500.00 that the District sold or abandoned during the current reporting period is listed on Exhibit C.

   b. The Board has neither closed nor discontinued use of any school property, building, or facility since its Annual Report of 2010.

8. **BI-RACIAL ADVISORY COMMITTEE**

   a. The RISD Bi-Racial Advisory Committee (the "BRAC") continues to operate pursuant to the Order filed September 10, 1970. The members of the BRAC are listed on Exhibit D.

   b. The BRAC's general charge is to function in the education process by discussing ways and means of achieving interracial harmony and understanding among students, teachers, and patrons, and to function as an advisory body to RISD and the Board and the Court. *See Order,* filed September 10, 1970, at 6-7.

9. **ADDITIONAL INFORMATION**

   a. **Bond Election**

      In February 2011, RISD's Board of Trustees ordered a special bond election. The bond election, which will occur in conjunction with the general county-wide election, will take place on May 14, 2011. RISD has proposed a bond referendum in the amount of $170,000,000. If approved, bond proceeds would be used to fund capital projects such as renovations and improvements, technology initiatives, and other projects that will affect every school in the District. A bond project overview summary is attached as Exhibit E.

b.  **Unitary Status**

Over the last two years, RISD provided information to the Court in its Annual Report concerning the May 2008 decision by the Board of Trustees to seek dismissal of this desegregation litigation that has continued for over 40 years. RISD also has periodically communicated with the BRAC on this matter.

RISD now respectfully advises the court that it soon will file a motion seeking dismissal of the 41-year old desegregation order.  RISD will ask the court for a declaration that it has achieved full unitary status under the terms of the 1970 desegregation order and under applicable law.  In its motion, and upon hearing, RISD will show the court that it has followed the command of the U.S. Supreme Court in *Board of Education v. Dowell*, 498 U.S. 237 (1991) and *Freeman v. Pitts*, 503 U.S. 467 (1992) to comply in good faith with the desegregation orders of this court, and to eliminate the vestiges of the prior segregated school system to the extent practicable.

Since April 2008, RISD's counsel has been engaged in active communications with the Department of Justice ("DOJ") attorneys who represent the Plaintiff United States of America in this matter.  The DOJ filed the original suit in 1970, and has represented the U.S. in this matter continuously since 1970. Each year, in addition to its brief Semester Reports, RISD files a more comprehensive Annual Report that includes information on the topics specified in the 1970 Order, as amended. As appropriate, RISD also has included additional information in the Annual Report to keep the Court apprised of matters that may be relevant to the litigation.  RISD has served the DOJ with each Annual Report that it files with the Court.  As the Court's docket shows, over the past 40 years, DOJ has not filed any objection or complaint about the compliance efforts that RISD has undertaken, as noted in each report, to fully comply with the 1970 Order.

More recently, the DOJ and RISD have been engaged in a detailed review of the District's compliance efforts under the 1970 Order.  In April 2008, the DOJ served a request on RISD to provide voluminous data so that DOJ could make an assessment of the District's compliance with the Order.  RISD provided a detailed response along with the requested data in August 2008.  On October 27, 2010, DOJ served RISD with a supplemental request for further information relating to the District's compliance efforts under the order and RISD provided additional information.  The DOJ's requests for data and the information that RISD provided in response covered every aspect of the 1970 Order and the factors identified in *Green v. County School Board of New Kent County*, 391 U.S. 430 (1968) (so-called "*Green*" factors).

On December 14-17, 2009, the DOJ conducted an on-site inspection of the District's school facilities, transportation, and student academic and extra-curricular programs. During the site visit, RISD provided the DOJ access to the school campuses the Department's attorneys pre-selected for inspection and to

various school administrators, principals, teachers and other staff.  It is our understanding that the DOJ also may have conducted interviews with some members of the court-appointed Bi-Racial Advisory Committee or other community members around the time of the site visit, as well.

Following the on-site inspection, RISD contacted DOJ to obtain an assessment of the DOJ's findings and conclusions based on the data provided to them and the subsequent discovery conducted by DOJ.  The District was particularly focused on whether DOJ would enter into an agreed motion to confirm that RISD has met its obligations under the 1970 desegregation Order and has achieved full unitary status.  The parties have exchanged correspondence detailing their views on the question of unitary status, and have engaged in several telephone conferences to discuss their respective views on the empirical data provided to DOJ and any conclusions that could be drawn from that data, the applicable legal standards that govern the court's declaration of unitary status, and whether the parties could enter into any factual or legal stipulations.

The DOJ has advised RISD that it agrees that RISD has achieved partial unitary status.  Specifically, the DOJ agrees that RISD is "unitary" in the *Green* factors of transportation, facilities and student activities.  The Department disagrees that RISD has demonstrated its entitlement to unitary status with respect to the *Green* factors dealing with faculty and pupil assignment.   RISD has asked DOJ to enter into a stipulation concerning the *Green* factors about which there is no disagreement.

RISD is firmly resolved that after 40 years, it has faithfully complied with the orders of this court and has more than ably demonstrated its commitment to racial equality and equal educational opportunity for all its students and faculty regardless of race.  RISD intends to seek an evidentiary hearing and ask for a declaration of full unitary status.

Was
Dated:   April 15, 2011.

Respectfully submitted,

RICHARDSON INDEPENDENT SCHOOL DISTRICT

By: s/ Mia M. Martin
    Mia M. Martin, Attorney
      State Bar No. 13094410

400 South Greenville Avenue
Richardson, Texas   75081
TEL (469) 593-0341
FAX (469) 593-0344

ATTORNEY FOR DEFENDANT
RICHARDSON INDEPENDENT
SCHOOL DISTRICT

## CERTIFICATE OF SERVICE

On April 15, 2011, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. I hereby certify that in addition to the counsel who receive service via electronic filing, I have served the following counsel of record via First Class U.S. Mail, postage prepaid, as authorized by Federal Rule of Civil Procedure 5(b)(2):

    LeVern Younger, Esq.
    Lawrence Baca, Esq.
    Education Opportunities - Litigation Section
    Civil Rights Division
    U.S. Department of Justice
    10th & Constitution Avenue
    Washington, D.C.   20530

    s/ Mia M. Martin
    Mia M. Martin